## COWAN *vs.* ADAMS & *als.*

A. authorized B. his agent, to sell certain logs belonging to the principal, and expressly instructed him, that in every event, the logs were to *remain the property of the principal until paid for, or amply secured.* B. sold, permitting the property to go into the possession of the purchaser, without being paid for, and for security, the purchaser agreeing that the principal should have a *lien* upon the logs until paid for. *Held,* that the sale was not obligatory upon the principal, it not having been made in conformity to the authority given; the supposed *lien* without *possession,* yielding but an imperfect security, and differing from that contemplated by the principal.

The statute of frauds relating to contracts for the sale of goods, &c. of the price of $30 or more, cannot be set up in defence, except by him who is sought to be charged by such contract, or his legal representatives.

THIS was an action of trespass for taking and carrying away a quantity of pine mill logs. It was proved that they were cut by the plaintiff in the winter of 1828–9, on a township of land then owned by *John P. Boyd,* which he purchased in *July,* 1828, of the State, in pursuance of information derived from the plaintiff, who had spent considerable time, and incurred some expense in exploring it.

Immediately after *General Boyd* bought the township, he requested *Edmund T. Bridge, Esq.* to take the general superintendance of it, and instructed him to give the plaintiff the preference as a purchaser of the timber, if he would give as much as any other person. He further directed him, to receive proposals for the sale of the timber, and to report them to him. The plaintiff offered one dollar per thousand, which *Boyd* de-

Cowan *v.* Adams & als.

clined, saying it was worth $1,50. *Bridge*, however, testified that, the best offer he received from any other person was 75 cents per thousand.

*Aug.* 22, 1828, *Boyd*, in a letter to *Bridge*, said, " After re-" ferring to your several advices, am fully decided that the " sooner arrangements are concerted for the sale of stumpage " the better ; the mode, security, &c. has been submitted for " your judgment. I should hope to obtain more than one dol-" lar, *but you will do the best for my interest.*" " *Contracts* " *should be so made that the logs are to be my property until* " *paid for.*"

Late in the fall of 1828, *Bridge* informed *Boyd*, that the plaintiff was cutting timber on his township, and *Boyd* thereupon wrote to him, to seize the logs — but *Bridge* replied, that he did not think it for *Boyd's* interest to seize the logs then, but to avoid giving the plaintiff any license or permission and thereby hold him and his logs in his power, and that he might settle with him in the spring, having the logs scaled, and taking pay for the standing timber. To this *Boyd* assented, or referred the matter to the discretion of *Bridge.*

In another letter from *Boyd* to *Bridge*, dated *Dec.* 23, 1828, he said, " Refer to my advice of *Aug.* 22, — the logs *always to* " *remain my property until ample security or payment is made.*"

In *April*, 1829, *Bridge* and the plaintiff, agreed upon one *Joseph Norris* to scale the logs, who did so, and made his report to *Bridge*, and he to *Boyd.* For the timber thus cut and scaled, *Bridge* settled with the plaintiff at one dollar a thousand, deducting 15 per cent. from the aggregate scale. It was agreed that *Boyd was to have a lien upon the timber until paid for, according to the plaintiff's contract.* *Boyd*, after some objection, finally paid *Norris* for one half his services, as had been agreed between *Bridge* and the plaintiff. The latter was to take charge of the logs and run them to market, subject to *Boyd's* lien. The sum to be paid by the plaintiff was $850, 67, which was predicated on *Norris's* survey. None of the logs were run down in 1829. In 1830 the plaintiff run down a raft, out of the proceeds of which, he paid to *Bridge* $600 on account of his contract, that sum being in the opinion of *Bridge*, the

amount of the stumpage on the timber thus got down that season. Of this amount, $500 was remitted to *Boyd,* and for the balance *Bridge* gave him credit in account.

It appeared that no other adjustment was made, or payment received from the plaintiff, until the death of *Boyd,* which happened in *November,* 1830.

*Bridge* stated, that it was his intention and expectation that *Boyd's* lien should be preserved until he was fully paid.

On the part of the defendants, was introduced the deed of *Boyd* to *Tarbell,* one of the defendants, dated *Aug.* 23, 1830, of the township on which said logs were cut, and *Tarbell's* deeds of one third to each of the other defendants. — Also the deposition of *Samuel Adams,* who testified that he, as the agent of *Gen. Boyd,* effected the sale of the township to *Tarbell.* In one conversation he had with *Boyd* upon the subject, he asked him what he intended to convey. *Boyd* replied, that he meant to convey with the township, all the logs and timber standing or cut, and after the deed was given, he offered to give a separate instrument to that effect, but it was not done.

It was proved that the logs in controversy, at, and after the giving of this deed, were lying within the limits of the township where they had been cut, and where they were taken by the defendants' agent and run down to a market by the express direction of the defendants after they had taken possession of said township, which is the trespass complained of.

It was contended by the defendants' counsel, that the plaintiff never had any property in the logs sued for — that *Bridge* had no authority to transfer them to him — and if he had, it was only upon and after actual payment of the stumpage, which had not been entirely paid — and that *Bridge* never did undertake or agree to transfer the logs to the plaintiff.

But the presiding Judge instructed the jury that the authority given by *Boyd* to *Bridge* was sufficient to enable him to transfer the interest of *Boyd* in the logs, and that the letters that passed between him and *Bridge,* the contract of the plaintiff, and the testimony of *Bridge,* were sufficient evidence that the authority was fairly exercised, and the property in the logs transferred to the plaintiff subject to the lien of *Boyd.* — The

defendant's counsel further contended, that by the deed to *Tarbell*, and the agreement proved by the deposition of *Samuel Adams*, these logs were conveyed to the defendants. But the jury were instructed, that neither that deed, nor the agreement, could operate to convey logs to the defendants, which *Boyd* had either by himself or agent, previously sold to the plaintiff. — It was further contended for the defendants, that the logs being upon their land, and thus in their possession, they could not, under the circumstances, be trespassers for taking and removing them. But the Court instructed the jury, that although the logs were on the land, they were not the property of the defendants, that what they did by their agent, *Gibson*, was a violation of the rights of the plaintiff that made them trespassers, and that they might be charged in this form of action.

If the ruling and instructions above, were not correct in the opinion of the whole Court, the verdict, which was returned for the plaintiff, was to be set aside and a new trial granted, otherwise, judgment was to be rendered thereon.

*Allen* and *Sprague*, for the defendants.

1. The logs in question lying upon the land at the time of the conveyance, passed by *Boyd's* deed to *Tarbell*. *Farrar v. Stackpole*, 6 *Greenl.* 154; *Lassell v. Reed*, 6 *Greenl.* 222; 4 *Dane's Abr.* art. 9. If not, the circumstances testified to by *Samuel Adams*, are tantamount to a bargain and sale.

2. *Bridge* never *sold* to the plaintiff, — at most, it was a mere contract *to sell*.

3. But if he did sell, *Boyd* retained a *lien* upon them, or else the sale was void, *Bridge* in that event, having exceeded his authority. He had no authority to sell without receiving *payment* or *security*. He had no authority to sell without retaining a *lien* on the logs until payment.

4. But the defendants are not liable in *trespass*, however they may be in *trover*, or *assumpsit*. The land was theirs — the logs were on it — and they might lawfully take and remove them from the land.

*Boutelle* and *Potter*, for the plaintiff, argued against the admissibility of *Adams'* deposition on the ground, that a grantor

cannot by his declarations, made subsequent to the grant, impair or affect it. *Bartlett v. Delplat*, 4 *Mass.* 702; *Clark v. Wait*, 12 *Mass.* 439.

But if admissible, and it prove a sale, then contend that the sale would be within the statute of frauds, and so nothing passed to the defendants.

*Bridge* was fully authorized to sell, and did sell to the plaintiff. *Boyd*, in his letter of *Aug.* 22d, 1828, directs *Bridge* to do the best he could, thereby investing him with a general authority.

But if *Bridge* had no precedent authority to make the sale in the manner he did, yet if *Boyd* knew it, as it seems he did, and made no objection, as it seems he did not, it may be construed as a confirmation of the sale. *Frothingham & al. v. Haley*, 3 *Mass.* 70.

In this case, however, there was not merely a silent acquiescence in the doings of *Bridge*, but an express ratification, by the appointment of *Norris* to scale the timber, and afterward receiving the pay for it in part.

That the plaintiff has a good cause of action, and that trespass is the proper remedy, they cited further, 5 *Dane's Abr.* 559; 9 *Pick.* 552; *Cowing v. Snow*, 11 *Mass.* 415; *Petersdorff's Abr.* 15, 123; 3 *Stark. Ev.* 1490; 2 *Saund. R.* 47, note c.; 1 *Chitty on Plead.* 48.

The opinion of the Court, at a subsequent term, was delivered by

MELLEN C. J. — The plaintiff claims a right to maintain this action against the defendants, and recover damages for the alleged trespass by them committed, in virtue of a contract made with *Bridge* as the agent of *Boyd*, in *April*, 1829. It appears that the logs, respecting which the contract was formed, had been *before* that time cut by the plaintiff, *without permission*, on *Boyd's* land, and were *then* lying there. It is important to ascertain the *nature* and *extent* of the *instructions* and *authority given* by Boyd to Bridge, *in relation to the logs* in *question;* and in the next place, the *nature* and *consequences* of the *contract* as made, *if made* in *conformity* to the *instructions*

Cowan *v.* Adams & als.

and *power* given by *Boyd* to his agent. The evidence as to the nature and extent of *Bridge's* authority is principally derived from *Boyd's* letters to him ; for *Bridge,* in his testimony, speaks of no other or verbal instructions, though he describes them in the manner in which he seems to have understood them in making the contract with *Cowan.* In *Boyd's* letter of *August* 22d, 1828, which has almost exclusive reference to the logs in question, he says, as to the disposition of them, " contracts " should be so made that the logs are to be *my property until* "*paid for.*" In another letter of *December* 23d, 1828, he says, " *Refer to my advice* of *August* 22d, the logs always to remain " *my property* until *ample security* or *payment is made.*" Again, in his letter of *April* 27th, 1829, about the time the contract was made, he says, " I have your favour of the 24th. The care " of my property in *Tom Hegan,* was committed to your legal " knowledge, *with my several advices.* 1. To request your fath- " er's advice respecting the trespass of *Cowan.* — Next, that " payment for all logs cut should be made in *June* ; and, *to* " *hold the logs until absolutely paid for.*" In no one of his letters is any authority given, to make any disposition of the logs, by which the *property* of them should pass to *Cowan,* until they should be *fully paid* for. It is contended by the counsel for the defendants, that the contract made by *Bridge* was not justified by his instructions ; and that, as they claim under *Boyd,* they are interested in this question, and, of course, are entitled to contest the validity of the contract, as made by *Bridge* and *Cowan.* And they further contend that the contract, as made, amounts to a *transfer of the property* of the logs to *Cowan,* and that a *lien* only is reserved to *Boyd,* upon the logs, as security for payment; and that *such a lien,* unaccompanied with a *possession* of the logs, was of no use to *Boyd* or of any legal effect, whatever the parties might then have supposed. It here becomes necessary for us carefully to examine the alleged distinction, and the rights which *Cowan* would have had, in respect to the logs in question, had the contract been made in the spirit and terms of the instruction ; and also what are his rights, according to the terms of the contract as stated by *Bridge,* in his testimony. His own words are, " It was agreed that *Boyd* was

" to have a *lien* upon the timber, until paid according to the
" plaintiff's contract." — He adds, that *Cowan* " was to take
" charge of the logs and run them to market, *subject to Boyd's*
" *lien.*" If there is a material distinction between the contract
*as made,* and as it was the *duty of Bridge to make it,* in pursu-
ance of his instructions, in regard of the legal rights of *Cowan* un-
der the contract, then *Boyd* was not bound by it, and *Cowan* ac-
quired no rights under it, unless *Boyd* afterwards ratified and
sanctioned the contract, as made ; of which fact there is no
evidence before us. This is a principle of law perfectly famil-
iar. *Paley on agency,* 150, 151. The parties to a contract
are always supposed to have some object *in,* or some expected
advantage *from,* the insertion of the stipulations and provisions
it contains. In giving his instructions to *Bridge, Boyd* must
have considered the logs as unsafe, under the absolute control
of *Cowan,* as his letters distinctly show, and as liable to be sei-
sed by *Cowan's* creditors ; the object of both parties must have
been to secure *his* interests against that peril, in a manner deem-
ed legal and sufficient. In the action of *Waterston & al. v.
Getchell,* 5 *Greenl.* 435, the nature of such a contract as was
intended by *Boyd* has been the subject of examination and de-
cision by this Court. The facts were these : The plaintiffs en-
tered into a contract with *Robinson,* by which they granted him
permission to enter upon their tract of land and cut and carry
away therefrom, pine timber, which was to be floated down to
certain specified places. The contract contained a clause, " that
" the ownership of all the timber so cut, how or wherever sit-
" uated, should be and continue in the hands of *Waterston & al.*
" until all sums due them, &c. shall be paid and discharged, and
" all the conditions of this agreement fulfilled." — *Robinson* sold
the timber to the defendant, who knew of the reservation, and
the plaintiffs recovered against him. Suppose the contract had
been made as *Boyd* directed — the property to remain in *him*
till payment, (which has never been made :) how could *Cowan*
be viewed, in a legal sense, any thing more than the *agent* or
*servant* of *Boyd* in running the logs to market. In such case
the possession of *Cowan* would have been the possession of
*Boyd,* for the purposes of protecting his own rights, reserved to

him by the contract. On what principle, then, can the plaintiff maintain the present action and recover damages, equal to the value of the timber ? If he can so recover, of what use is the cautionary proviso in the contract, as to *Boyd's ownership* of the logs till paid for ? The whole benefit of it is lost at once, and it is taken from him in direct violation of the property of the owner, *Boyd,* and *contrary* to the *express agreement* of the parties, made for the sole purpose of protecting it from violation. The design was to leave the *property* in *Boyd,* to prevent *Cowan* from disposing of it as *his own* property, or its being attached or seised on execution by his creditors, and in either case, that he might have it in his power, by asserting his rights, to reclaim the property for his own use. His object was to have the legal control of it and of its avails. The contract *authorized to be made,* was a legal one.

But in the manner the contract was made by *Bridge,* if *Boyd* was bound by it, then the *property* of the logs was *transferred* to *Cowan,* subject, it is said, to the *lien* of *Boyd* for the amount due. But on this principle there was no *lien ;* for the logs were in the possession of *Cowan.* " No *lien* can be *acquired,* unless " the property on which it is claimed, come into the possession " of the party claiming it." *Kinlock v. Craig,* 3 *T. R.* 119 ; *Whitaker on Lien,* 65 ; *Portland Bank v. Stubbs & al.* 6 *Mass.* 462. Nor *continue* any longer than his possession of such property continues. *Jones v. Pearl,* 1 *Stra.* 556 ; *Doug.* 97 ; 1 *East,* 4 ; 7 *East,* 5. The consequence of which must be, that the absolute property vested in *Cowan,* contrary, not only to the repeated directions of *Boyd,* but the idea and intention of *Bridge.* However, upon a full view of the facts of the cause, touching this branch of it, and the principles of law applied to them, we are satisfied that the contract made by *Bridge* and *Cowan* was not authorized by *Boyd's* instructions and think the presiding Judge's opinion erroneous on this point ; and that the contract, therefore, must be deemed a nullity, unless it has been since ratified by *Boyd,* as we have before observed, of which we have no evidence.

The only remaining question is, whether the plaintiff can maintain the action against the defendants on his *alleged pos-*

*session* of the logs, without other title. If they are to be considered as *strangers,* and without any privity with *Boyd,* we think the authorities cited and many others clearly show that the plaintiff is entitled to recover; but is there not a privity existing between *Boyd,* or his heirs, and the defendants? On the 23d of *August,* 1830, *Boyd* made a deed of the township to *Tarbell, one* of the defendants; and he conveyed one third part of it to *each* of the *others ;* and *Samuel Adams* testifies that in a conversation with *Boyd,* which was before the deed was given, he told him, after some conversation respecting logs and timber, that he meant to convey all the logs and timber, *standing or cut,* and offered to give a separate instrument for it. He had a right to do this, inasmuch as the contract, made with *Cowan* was not binding upon *Boyd.* On this principle, as the defendants claim the logs under *Boyd,* they are not *strangers;* and, of course, may defend themselves, if the sale of the property by *Boyd* to them was complete and effectual. No writing was necessary to make the sale valid. At the time, the property was lying on *his* land, and, in *his* possession : he then had a legal right to dispose of it. But it has been contended that the sale of the timber was void by the statute of frauds, *sec.* 3d, the property being sold for a price exceeding thirty dollars. To say the least of it, it seems to be a singular objection for *Cowan* to make. He was no party to the contract, nor representative of a party. The 3d *sec.* of *ch.* 53, of the revised statutes declares, that no contract for the sale of goods, &c. for the price of thirty dollars or more shall be allowed to be good, except the purchaser shall accept part of the goods and actually receive them, or give something in earnest, or in part payment, or some note in writing, of the bargain made and signed by the parties *to be charged* by such contract. Here, it is evident, that a party attempted to be charged by the contract, is the person objecting to the charge made; and in all the cases where the question has arisen, a party to the contract or his legal representative made the objection, when called on to perform his contract. Surely no person can plead infancy or the statute of limitations but a party to the contract thus attempted to be avoided, or his legal

representative. Neither *Boyd* nor his representatives are dissatisfied with the sale he has made. But, independent of the above observations, by attending to the facts in the case, we perceive that the objection is not supported by facts. When the conveyance of the township was made by *Gen. Boyd* in *August,* 1830, the timber on the land, as well as the land, passed into the possession of *Tarbell,* who made the purchase for *all* the defendants. In this manner the sale was perfected and complete. 2 *Starkie,* 609; *Searl v. Keeves,* 2 *Esp. Ca.* 598. The next spring, the defendants, by their agent, took the property and removed it, and appropriated it to their use.

On the whole, we are of opinion, that the action is not maintainable upon the evidence before us, and accordingly the verdict is set aside and a new trial granted.